ALETHIA ALLEN AND ANOTHER, BY NEXT FRIEND, *vs.* CHARES L. GAILLARD AND OTHERS.

Investments by a guardian of his wards' funds, at about eighty-five cents on the dollar, in bonds of the Greenville and Columbia Railroad Company, unsecured by mortgage on the road, or otherwise, not sustained.

The bonds of a railroad corporation are personal securities, in contradistinction to public or real securities, and can only be upheld as proper subjects for the investment of trust funds, under special circumstances, which ought to be made to appear by the trustee.

That the bonds in question were sought after, at the time the investments were made, by prudent and sagacious men; that no investment at that time was regarded as more safe and judicious; that they bore 7 per cent. interest, payable semi-annually, and were a favorite investment with capitalists; that their coupons were taken by the merchants as so much money; that the guardian acted in entire good faith, and purchased, at the same time, other bonds of the same kind for himself; and that three or four hundred thousand dollars of them were held by citizens of the District: *Held*, Not to justify the investments.

BEFORE CARROLL, CH., AT ANDERSON, JUNE, 1868.

The bill in this case was for an account by the defendant, Charles L. Gaillard, as guardian of the plaintiffs, and the only question considered and decided by the Court was, whether certain investments of the estates of his wards, made by the defendant, in the years 1859 and 1860, in bonds of the Greenville and Columbia Railroad Company, at eighty-five cents, or thereabouts, on the dollar, were legal.

His Honor the Chancellor, having considered the evidence, and held that the investments were actually made, proceeded with his decree as follows:

CARROLL, Ch. Another question remains to be considered. If, in fact, the alleged investments were actually made, then it is objected that the bonds in question were not public but private, and merely personal securities, and were not so well secured and certain as to authorize a trustee to invest in them. In *Spear* vs. *Spear*, 9 Rich. Eq., 188, it is observed by the Chancellor, that there is no special mode of investing his wards' funds prescribed to a guardian by any statute or rule of Court in this State. What is afterwards said by the Court, in the same case, respecting the investment of the funds of the infant parties, was addressed to their guardian, and was not the announcement of any rule of universal or general application. The personal liability of a trustee, in any particular case, is to be determined by the enquiry, whether there is evidence of faithful endeavors, on his part, to fulfil his duty. "To require from a trustee more than common sagacity and diligence is against policy." From these principles is deduced the rule that a trustee is answerable for those losses only which are occasioned by such acts or omissions as a prudent man would not do or omit in his own affairs.—*Boggs* vs. *Adger*, 4 Rich. Eq., 410; *Hext* vs. *Porcher*, 1 Strob. Eq., 171–2. In the case cited, of *Boggs* vs. *Adger*, the loss arose from the investment of the infant's estate in the stock of the Bank of the United States, and the guardian was held excused. By order of this Court, in *Monk* vs. *Pinckney*, 9 Rich. Eq., 279, an executor was directed to invest the moneys in his hands, being the residue of his testator's estate, in stocks of the banks of the City of Charleston. In the lower division of this State, and prior to the recent war, it is a matter of notoriety that trust funds were commonly invested in stocks of the Charleston banks, and bonds of the South Carolina Railroad Company.

The bonds of the Greenville and Columbia Railroad Company, purchased by Dr. Gaillard for his wards, were not secured by lien upon the road, and were known as the "non-mortgage bonds." There had been other bonds of that company previously issued, to amount of some $800,000, secured by mortgage of the road. But the company had expended three millions of dollars in building their road, and their bond debt, at that time, was but $1,500,000. When first issued, the non-mortgage bonds sold for less than those secured by mortgage, but afterwards there was very little difference in their price. A witness testified that, upon one occasion, he exchanged two of the mortgage bonds with General Harrison for two of the non-mortgage bonds of like amount, and "exchanged at

par." In 1859 and 1860 these bonds—the non-mortgage bonds—were sought after as investments by prudent and sagacious men. "No investment at that time was regarded as more safe and judicious. They were a favorite investment with capitalists; bore seven per cent. interest, payable semi-annually. Their coupons were taken by the merchants as so much money," and "three or four hundred thousand dollars of them were held by citizens of that District."

That Dr. Gaillard acted in perfect good faith, when investing the moneys of his wards, the plaintiffs, in the bonds referred to, cannot be doubted. It appears, conclusively, and independently of other evidence, by the significant fact that he purchased for himself, and at the same dates, bonds of the same description, and upon the same company, to more than double the amount that he had purchased for his wards. He cannot be held responsible for the loss resulting from the investment in question, and it is so adjudged and decreed.

It is further ordered, that an account be taken of the estates of the plaintiffs, respectively received by, or come to the hands of, their guardian, the defendant, C. L. Gaillard, and of all and singular his transactions in respect of the same; and that, as to his investments upon their account in the bonds of the Greenville and Columbia Railroad Company, herein above mentioned, he be discharged upon surrender and delivery of those bonds to the person who shall be appointed to succeed him as such guardian.

And it is further ordered, that the Commissioner make inquiry and report as to some fit and proper person to be appointed the guardian of the plaintiffs in the stead of the defendant, Gaillard, and as to the terms of such proposed appointment.

The plaintiffs appealed, and now moved this Court to reverse the decree, on the grounds, among others:

1. Even if the guardian intended to make this investment in second class railroad bonds, never at par, and had complied with all the legal requisites of such investments, yet such depreciated railroad bonds are not a fit and proper subject for the investment, (if made,) and was contrary to the duty of the guardian—illegal and void.

2. Because the proof showed that the bonds were purchased at a discount, and the Chancellor's decree gives the guardian credit for their whole nominal value, thus approving and encouraging guar-

dians to speculate upon their wards, which is at war with the fundamental principles touching the relations of guardian and ward.

3. It is respectfully submitted that the Chancellor *misconceived* the rule in regard to the "faithfulness" of trustees. Mere general good intention is not enough; it must be fidelity in *the line of their duty*.

*McGowan*, for appellants.

*Whitner*, contra.

March 12, 1870. . The opinion of the Court was delivered by

WILLARD, A. J. The decision of this case turns upon the question whether the defendant, Gaillard, as guardian of the complainants, made a legal investment of their estate.

The fact of investment was disputed, but need not be considered, as this Court holds that the subject of the investment was not suitable. The guardian claims to have purchased, with the wards' money, bonds of the Greenville and Columbia Railroad Company, at eighty or eighty-five cents on the dollar, being unsecured by mortgage or otherwise, which bonds have since been greatly depreciated.

The bonds of a railroad corporation are personal securities, in contradistinction to public and real securities, and, under the decision of this Court, in *Nance* vs. *Nance*, (Ante., p. 209,) can only be upheld as proper subjects for the investment of trust funds, under special circumstances, which ought to be made to appear by the guardian.

In the present case, all that the guardian urges in support of the investment is the estimation in which the bonds were held at the time the investment was made. These bonds having since depreciated, the wards are prejudicially affected by the failure of the guardian to exact adequate securities.

The bond of a railroad company, unless secured by a mortgage of the property of the company, or otherwise, have but little more than speculative value. Its market value must depend upon the opinion that is entertained as to the extent of future earnings and the character of the management of the road. Such elements of value are too unstable and speculative to form a safe subject for the investment of trust funds.—*Nance* vs. *Nance*. The operation of the rule laid down by the Courts of Equity is to favor that class of se-

curities in which the risk is general, depending upon the prosperity of the country at large, and not upon the chances attending the prosperity of any person or corporation.

It is adjudged and decreed, that so much of the decree appealed from as orders that the defendant, C. L. Gaillard, be discharged from responsibility for the investment upon the account of the complainants in the bonds of the Greenville and Columbia Railroad Company, on the surrender and delivery of said bonds to the person who should be appointed to succeed him as guardian, be, and the same is, wholly reversed and set aside; and it is further adjudged and decreed, that, on the accounting directed by said decree, the said C. L. Gaillard account for the moneys received by him on account of the complainants, with interest, without regard to the alleged investments claimed by said Gaillard to have been made by him as guardian, and that the decree be, in all other respects, affirmed.

*Moses,* C. J., concurred.